**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ROGER BURAIMOH** | § | |
| | § | |
| v. | § | 1:20-CV-0019-RP |
| | § | |
| **BMW OF NORTH AMERICA, LLC** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant BMW of North America, LLC's Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) (Dkt. No. 8); Plaintiff's Opposition (Dkt. No. 10); and BMW's Reply (Dkt. No. 11). The District Court referred the above motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

### I.   GENERAL BACKGROUND

Roger Buraimoh brings this case alleging express and implied warranty claims under the Magnuson-Moss Warranty Act (the MMWA) and the Texas Business and Commerce Code; violations of Texas Deceptive Trade Practices Act (DTPA); and fraudulent concealment. The suit was originally filed in conjunction with similar claims made by seven others, but the cases were severed following the recommendation of the undersigned.

Buraimoh alleges that in May of 2015 he purchased a pre-owned 2014 BMW X6 from Land Rover Huntington, as a "certified pre-owned vehicle," paying $72,188.16, including options, fees, taxes, and other charges. After purchase, he alleges he experienced problems with the engine consuming an excessive amount of oil, and ultimately discovered that the engine in this car—the "N63" BMW engine—is allegedly defective, in that it consumes excessive engine oil. In January

2020 he filed this lawsuit seeking damages, revocation of the sales transaction, a refund of the purchase price, the repair or replacement of the vehicle, as well as incidental and treble damages under the DTPA, punitive damages, and attorney's fees. Dkt. No. 7 at 24.

In the present motion, BMW moves to dismiss Buraimoh's suit for lack of jurisdiction, or, alternatively, to dismiss some or all of the claims under Rule 12(b)(6). Buraimoh's First Amended Complaint alleges the Court has federal question and pendent jurisdiction over the case as a result of the MMWA claim and separately also has diversity jurisdiction over the case given the parties' citizenship.  Dkt. No. 7 at 3. BMW argues that this case should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because Buraimoh has failed to demonstrate that the amount in controversy satisfies the jurisdictional minimum, and alternatively, that Buraimoh has failed to state a claim under Rule 12(b)(6). The Court addresses BMW's jurisdictional arguments first. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

## II.  STANDARDS OF REVIEW

**A.     Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Federal district courts are courts of limited jurisdiction, and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Assn. of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161 (5th Cir. 2001). "Accordingly, the plaintiff

constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). Where a defendant attacks jurisdiction based solely on the allegations of the complaint, as here, the plaintiff's factual allegations are presumed to be true. *O'Rourke v. United States*, 298 F.Supp.2d 531, 534 (E.D. Tex. 2004). Dismissal for lack of subject matter jurisdiction is appropriate when the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996). When a Rule 12(b)(1) motion is filed with a Rule 12(b)(6) motion, the court should consider the jurisdictional attack before addressing the 12(b)(6) motion. *Rodriguez v. Texas Comm'n on the Arts*, 992 F.Supp. 876, 879 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000).

**B.     Rule 12(b)(6)**

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.* The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the

motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III.  ANALYSIS

A.  **Subject Matter Jurisdiction**

Buraimoh contends the Court has jurisdiction over this case as a result of the federal question raised by his MMWA claim and pendent jurisdiction over the remaining claims, and separately asserts there is diversity jurisdiction. Specifically, Buraimoh alleges in his Amended Complaint that the Court has (1) diversity jurisdiction under § 1332, "in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00," and (2) federal question jurisdiction under § 1331 "pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(B), in that the Plaintiff claims more than $50,000.00 in damages, exclusive of interest and costs, and under the doctrine of supplemental jurisdiction as set forth in 28 U.S.C. § 1367." Dkt. No. 7 ¶¶ 8-9. BMW contends that Buraimoh cannot meet either the $50,000 or the $75,000 amount in controversy requirement of these two statutes.

The parties do not dispute the presence of complete diversity, so the only question on diversity jurisdiction is whether the $75,000 amount in controversy requirement is met. Buraimoh bears the burden of proof on this issue. *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003). To determine whether the $75,000 threshold is met, courts first look to the complaint and consider jurisdictional facts as of the time the complaint was filed. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90 (1938). "Unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* at 288-89 (footnotes omitted). If the complaint does not allege a specific amount of damages to trigger the legal certainty test, then "the party invoking federal jurisdiction must prove by a

4

preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount." *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). If it is not "facially apparent" that the claims exceed the jurisdictional amount, the court may rely on 'summary judgment-type' evidence to ascertain the amount in controversy." *Id.*; *Llort v. BMW of N. Am.*, LLC, 2020 WL 2928472, at *3-4 (W.D. Tex. June 2, 2020).

Buraimoh's First Amended Complaint alleges that "this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00." Dkt. No. 7 ¶ 9. He further alleges that "the cost to repair the Vehicle that involves an engine replacement ranges from $12,500.00 to $15,000.00," and that "Plaintiff has spent approximately $10,000.00 in out-of-pocket costs associated with the Vehicle's excessive engine oil consumption." *Id.* ¶¶ 22-23. Buraimoh thus alleges a total of $25,000 in economic damages. While this would not meet the jurisdictional threshold, Buraimoh's First Amended Complaint also seeks treble damages and attorneys' fees under the DTPA for BMW's "intentional concealment of and failure to disclose the oil consumption defect." Dkt. No. 7 ¶ 131. Under the DTPA, a plaintiff may be entitled to recover up to three times the amount of damages if "the conduct was committed intentionally." TEX. BUS. & COMM. CODE § 17.50(b)(1). In addition, the DTPA provides for the recovery of reasonable and necessary attorneys' fees. *Id.* § 17.50(d). Courts routinely include treble damages and attorneys' fees under the DTPA in determining the amount in controversy under § 1332(a). *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) ("If a state statute provides for attorney's fees, such fees are included as part of the amount in controversy."); *Llort,* 2020 WL 2928472, at *5; *Mize v. BMW of N. Am., LLC*, 2020 WL 1526909, at *4 (N.D. Tex. Mar. 31, 2020); *Horton v. Allstate Vehicle & Prop. Ins. Co.*, 2019 WL 1552494, at *2 (W.D. Tex. Apr. 9, 2019), report and recommendation

5

adopted, 2019 WL 2563837 (W.D. Tex. May 1, 2019). Trebling Buraimoh's damages and including a reasonable amount of attorneys' fees clearly would raise his damages above the jurisdictional threshold. Buraimoh has thus alleged sufficient facts to show that the amount in controversy in this case meets the jurisdictional minimum of $75,000 under 28 U.S.C. 1332(a).[1] Accordingly, BMW's Motion to Dismiss based on this argument should be denied. *See Llort,* 2020 WL 2928472, at *5.

**B.     Standing**

BMW next argues that Buraimoh's claims should be dismissed because he lacks Article III standing. Specifically, BMW argues that Buraimoh's claims are too speculative, and he fails to adequately allege any loss or injury incurred other than the loss of $10,000 in out-of-pocket expenses. The Court disagrees. To establish Article III standing, a plaintiff must show: (1) an injury in fact; (2) a sufficient "causal connection between the injury and the conduct complained of;" and (3) a likelihood that the injury can be redressed by a favorable decision. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). An injury in fact must be "concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Buraimoh alleges that his car lost substantial value due to the alleged engine defect, and he suffered out-of-pocket expenses for extra engine oil and frequent oil changes. Taking Buraimoh's claims as true, he alleges economic damages that satisfy Article III's injury in fact, causation, and redressability requirements. Buraimoh has standing to bring this action. *Llort*, 2020 WL 2928472, at *6 (citing *Harris v. BMW of N. Am., LLC*, 2019 WL 4861379, at *3 (E.D. Tex. Oct. 2, 2019); *Bang v. BMW of N. Am., LLC*, 2016 WL 7042071, at *4

---

[1] Because diversity jurisdiction exists, the Court need not address whether there is federal question jurisdiction under the Magnuson-Moss Warranty Act.

(D. N.J. Dec. 1, 2016)). Accordingly, Defendant's Motion to Dismiss under Rule 12(b)(1) should be denied.

**B.      Failure to State a Claim**

BMW argues that Buraimoh's DTPA, breach of express warranty, breach of implied warranty, MMWA and fraudulent concealment claims should all be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. The Court finds that with the exception of his stand alone fraudulent concealment claim, Buraimoh states claims adequate to survive dismissal.

   **1.      DTPA Claim**

BMW asserts that Buraimoh's DTPA claim fails because he is a subsequent purchaser of a used vehicle, and DTPA claims are not assignable. Dkt. No. 8 at 11. Buraimoh responds that his breach of warranty DTPA claim is for a breach of his warranty, in the form of the New and Certified Pre-Owned Limited Warranty issued when he purchased the car, and based upon omissions and representations made to him by BMW when he purchased the car and had it serviced. Dkt. No. 10 at 11 (citing Dkt. No. 7 ¶¶ 11, 15-16, 25-33). Additionally. Buraimoh asserts that BMW's warranty states it applies not only to initial purchases but also to subsequent purchasers. *Id.* at 12 (citing Dkt. No. 7 ¶ 30).

Courts in both this district and the Northern District of Texas have rejected the argument BMW makes:

> BMW rests its arguments on *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, where the Texas Supreme Court explained that "a downstream buyer can sue a remote seller for breach of implied warranty, but *cannot* sue under the DTPA." 146 S.W. 3d. 79, 87 (Tex. 2004) (emphasis in original). However, BMW mischaracterizes the holding of this case in its application here. To clarify, the Texas Supreme Court was confronted with the issue of assigning rights to sue under the DTPA where a "downstream purchaser" brought express warranty DTPA claims "against a remote manufacturer, even though there was no privity of contract between them." *PPG Indus., Inc.*, 146 S.W. 3d. at 88. Further, the Texas Supreme Court

>explained that the downstream purchaser "asserted no DTPA claims in its own right, as it had no connections with PPG's original . . . sale, and never saw any PPG advertisements or warranties before it bought the building." *Id.* Here, in accordance with the FCR, Smith's allegations do not establish her as a "downstream purchaser." Rather, Smith alleges she purchased the vehicle from BMW, in privity of contract, when she purchased her vehicle with a Certified Pre-Owned Warranty. Under BMW's reasoning, a consumer who decides to purchase a vehicle after his lease period, but still directly from an authorized BMW dealer—like Pritchett did here—would also be precluded from bringing DPTA claims because the vehicle purchased would be technically "used." This Court declines to stretch the words of the Texas Supreme Court to fit that narrative.

*Llort*, 2020 WL 2928472, at *7-8 (citing *Mize*, 2020 WL 1526909, at *8) (some citations omitted). This Court rejects BMW's argument based on this same reasoning.

BMW additionally argues that Buraimoh cannot make out a DTPA claim because as a matter of law BMW had no duty to disclose any alleged defects to a subsequent purchaser of a vehicle. Dkt. No. 8 at 13. BMW relies upon *Adams v. Nissan North America, Inc.*, 395 F. Supp. 3d 838, 850 (S.D. Tex. 2018), and the cases cited therein, in support. *Adams* holds that in a fraudulent concealment case, "in an arms-length transaction where none of the Plaintiffs dealt directly with the vehicle manufacturer, there is no duty." *Id.* However, *Adams* noted that, "Plaintiffs do not allege any other facts supporting the inference that a duty may arise by some other circumstance, such that Nissan made any other voluntary or partial disclosure or representation that would give rise to a duty." *Id.* In this case, Buraimoh asserts that BMW's duty to disclose was based upon its superior knowledge of the defect, and upon its authorized dealer's representations to Buraimoh; both when it sold him the car under warranty, and when he brought it in for servicing and it was represented to him that excessive engine oil consumption was normal, and that no repairs were warranted.

Under Texas law, a duty to disclose may arise under four situations:(1) where there is a special or fiduciary relationship; (2) where one voluntarily discloses partial information, but fails to disclose the whole truth; (3) where one makes a representation and fails to disclose new information

8

that makes the earlier representation misleading or untrue; and (4) where one makes a partial disclosure and conveys a false impression. *Bradford v. Vento*, 997 S.W.2d 713, 725 (Tex. App.—Corpus Christi 1999), aff'd in part & reversed in part on other grounds by *Bradford v. Vento*, 48 S.W.3d 749 (Tex. 2001); *Hoggett v. Brown*, 971 S.W.2d 472, 487–88 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). Buraimoh has adequately pled facts sufficient to make out a duty here, as he alleges that BMW failed to disclose the defects with the engine when it sold him the car and when he brought it in for servicing and it was represented to him that excessive engine oil use was normal.

BMW further argues that Buraimoh's DTPA claims lack sufficient specificity to comply with Rule 9(b). Federal courts have held that claims under the DTPA must satisfy Rule 9(b)'s particularity requirement. *E.g., Gonzalez v. State Farm Lloyds*, 326 F. Supp. 3d 346, 350 (S.D. Tex. 2017); *SHS Inv. v. Nationwide Mut. Ins. Co.*, 798 F. Supp. 2d 811, 815 (S.D. Tex. 2011). In order to state a claim under the DTPA, a plaintiff must allege (1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing § 17.50(a)(1)). For a DTPA action alleging a failure to disclose information, as here, the plaintiff must show (1) a failure to disclose information, (2) which was known at the time of the transaction, (3) which was intended to induce the plaintiff into a transaction, and (4) that the plaintiff otherwise would not have entered the transaction if the information had been disclosed. *Hudspeth v. Enter. Life Ins. Co.*, 358 S.W.3d 373, 388 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Doe*, 907 S.W.2d at 478.

Buraimoh argues that he meets the 9(b) standard because he pled that BMW had knowledge of the defect as early as 2008, and despite that knowledge of the defect, concealed the defect when its authorized dealer sold the car to him, and when Buraimoh observed the symptoms of the defect

and sought repairs from BMW of Austin, who asserted no repairs were warranted. Dkt. No. 7 ¶¶ 5, 18-20, 25, 42-48, 50-55. This is adequate under Rule 9(b). *See Mize*, 2020 WL 1526909, at *9 (holding that plaintiffs plausibly pled DTPA claim where plaintiffs "pleaded that BMW, through its authorized dealers, failed to disclose the N63 engine defect, that it was material information about the vehicle known by BMW prior to each of Plaintiff's sales, and BMW withheld the information of the defect as it intended to induce Plaintiffs to purchase the vehicles").

### 2. Express Warranty

BMW next argues that Buraimoh has failed to state a claim for breach of express warranty under the Texas Business & Commerce Code § 2.313. To succeed on a breach of express warranty claim, the plaintiff must prove: (1) an affirmation or promise made by the seller to the buyer; (2) that such affirmation or promise was part of the basis for the bargain, e.g., that the buyer relied on such affirmation or promise in making the purchase; (3) that the goods failed to comply with the affirmation or promise; (4) that there was financial injury; and (5) that the failure to comply was the proximate cause of the financial injury to the buyer. *Lindemann v. Eli Lilly and Co.*, 816 F.2d 199, 202 (5th Cir. 1987) (citations omitted). Under Texas law, a claim for breach of express warranty sounds in contract, not in tort. *See Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 60-62 (Tex. 2008). Thus, the heightened pleading standards of Rule 9(b) do not apply. *See Schouest v. Medtronic, Inc.*, 13 F. Supp. 3d 692, 709 (S.D. Tex. 2014).

Buraimoh's First Amended Complaint adequately states a claim for breach of express warranty. Buraimoh alleges that BMW agreed to "repair or replace components found to be defective in material or workmanship" for four years/50,000 miles under the New Vehicle Limited Warranty, and for six years/100,000 miles under the Certified Pre-Owned Limited Warranty. Dkt. No. 7 ¶¶ 25-31. Buraimoh alleges that he relied on the warranties when he purchased the Vehicle. *Id.* ¶¶ 7, 25. Buraimoh further alleges that he provided BMW with notice of the alleged defect and gave BMW

reasonable opportunities to repair it during the warranty period, but that BMW failed to do so. *Id.* ¶¶ 19, 71. Buraimoh also pled he suffered damages as a result of the breach of warranty, including economic loss from the diminished value of, and his overpayment for, the vehicle and out-of-pocket costs arising from BMW's failure to repair the defective engine. Buraimoh has alleged sufficient facts to state a plausible breach of express warranty claim. *See Llort*, 2020 WL 2928472, at *8 (citing *Mize*, 2020 WL 1526909, at *7 (finding that plaintiffs' allegations satisfy the pleading requirements to state their breach of express warranty claims)).[2]

### 3. Implied Warranty

BMW moves to dismiss Buraimoh's breach of implied warranty of merchantability claim under TEX. BUS. COMM. CODE § 2.314(b)(3), arguing that he has failed to allege with sufficient specificity how the Vehicle is not merchantable. "To establish a breach of the implied warranty of merchantability, a plaintiff must show that the product contained a defect that renders it unfit for its ordinary purpose, the defect existed when it left the manufacturer's possession, and that the defect caused the plaintiff to suffer injury." *Barragan v. Gen. Motors LLC*, No. 4:14-CV-93-DAE, 2015 WL 5734842, at *8 (W.D. Tex. Sept. 30, 2015) (citing *Gen. Motors Corp. v. Garza*, 179 S.W.3d 76, 81 (Tex. App. 2005, no pet.)). "As applied to cars, the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects and, therefore, where a car can provide safe, reliable transportation, it is generally considered merchantable." *Bang*, 2016 WL 7042071, at *7.

Buraimoh alleges a plausible set of facts showing how the Vehicle was not merchantable. He alleges that the oil consumption defect caused the Vehicle to consume an excessive amount of engine

---

[2]BMW also asserts that Buraimoh's claim fails because he fails to allege the Vehicle is currently under warranty. However, this argument fails as Buraimoh pled that his car was under warranty when he sought repairs for excessive oil use. Dkt. No. 10 ¶¶ 19, 110.

11

oil, which required him to regularly add engine oil to the Vehicle between recommended oil change intervals to prevent catastrophic failure of the car's N63 engine and life-threatening accidents. Dkt. No. 7 ¶¶ 2-3, 18, 21, 34, 41, 69-71, 103. Buraimoh contends that a car "which is persistently at risk of engine failure is not merchantable." Dkt. 10 at 15. This is enough to state a plausible breach of implied warranty of merchantability claim. *See Mize*, 2020 WL 1526909, at *7 (finding that plaintiffs' allegations satisfy the pleading requirements to state their breach of implied warranty claims).

### 4. MMWA

BMW next argues that Buraimoh's MMWA claim fails because such claims depend upon the disposition of an underlying state law warranty claim. *In re Ford motor Co. Vehicle Paint Litig.*, No. MDL 1063, 1996 WL 426584, at *23 (E.D. La. July 30, 1996). Because the Court has rejected BMW's motion to dismiss the underlying state law claim, this argument fails. *See Mize*, 2020 WL 1526909, at *7 ("The Magistrate Judge properly found that Plaintiffs' allegations satisfy the pleading requirements to state their breach of express and implied warranty claims, and thus have stated a claim under Mag-Moss."); *Bedgood v. Nissan N. Am., Inc.*, 2016 WL 3566689, at *3 (W.D. Tex. June 24, 2016) (noting that plaintiffs' MMWA claims were contingent on their state law warranty claims and therefore denying motion to dismiss MMWA claim where court denied breach of the implied warranty of merchantability claim).

### 5. Fraudulent Concealment

Buraimoh also asserts an independent cause of action for fraudulent concealment under Texas law. However, "fraudulent concealment is not an independent cause of action, but is rather a tolling provision to prevent the defendant from relying upon a statute of limitations period as an affirmative defense." *Sweezey v. C.R. Bard Inc.*, 2020 WL 1237394, at *1 (N.D. Tex. Mar. 12, 2020) (citation omitted); *see also ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 544 n.21 (Tex. 2017)

("The doctrine of fraudulent concealment tolls the statute of limitations until the fraud is discovered."). Accordingly, though the argument remains available to Buraimaoh to respond to BMW's statute of limitations defense, to the extent it is stated as an independent cause of action in his First Amended Complaint, the fraudulent concealment claim should be dismissed. *Llort*, 2020 WL 2928472, at *10.

**C.     Statute of Limitations**

Lastly, BMW argues that all of Buraimoh's claims are time-barred under the applicable statutes of limitations. *See* TEX. BUS. & COM. CODE ANN. § 17.565 (West 1987) (two-year statute of limitations for TDTPA claims); TEX. BUS. & COM. CODE ANN. § 2.725(a) (West 2009) (four-year statute of limitations for a breach of express and implied warranty claims). BMW argues that because Buraimoh bought the Vehicle in May 2015 but did not file this lawsuit until January 2020, all of his claims are time-barred. Buraimoh responds that the applicable statutes of limitations are tolled based on his participation in the *Bang* class action, the discovery rule, estoppel, and fraudulent concealment.

The statute of limitations is an affirmative defense. FED. R. CIV. P. 8(c). "A plaintiff typically is not required to plead, in the complaint, facts that negate an affirmative defense." *Jaso v. Coca Cola Co.*, 435 F. App'x 346, 351 (5th Cir. 2011). "While a statute-of-limitations defense may be raised in a motion to dismiss under FED. R. CIV. P. 12(b)(6), such a motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Abdul-Alim Amin v. Universal Life Ins. Co.*, 706 F.2d 638, 640 (5th Cir. 1983) (citation omitted). The Court finds that Buraimoh's First Amended Complaint "properly delineates the specific facts alleged by Plaintiffs to suggest that the statute of limitations may have been tolled by BMW's concealment." *Mize*, 2020 WL 1526909, at *7. Accordingly, BMW's motion to dismiss based on the statute of limitations should be denied. *See id.* at *7 n.13

(listing cases in which BMW's statute of limitations argument has been denied at the Rule 12(b)(6) stage); *River Capital Advisors of N. Carolina, Inc. v. FCS Advisors, Inc.*, 2011 WL 831282, at *9 (E.D. Tex. Feb. 7, 2011) report and recommendation adopted, No. 4:10-CV-471, 2011 WL 831186 (E.D. Tex. Mar. 3, 2011) (denying statute of limitations argument at motion to dismiss stage and noting that "Plaintiff is under no obligation to plead against a possible affirmative defense or the possible exceptions to an affirmative defense").

## IV. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that BMW NA's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) (Dkt. 8) be **DENIED** except as to the statement of fraudulent concealment as an independent cause of action. Specifically, the Court **RECOMMENDS** that the District Court **DENY** BMW's Rule 12(b)(1) Motion to Dismiss for lack of jurisdiction. The Court **FURTHER RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss with regard to Plaintiff's fraudulent concealment claim, but **DENY** the Motion with regard to all other claims. The Clerk is directed to remove this case from the undersigned's docket and return it to the docket of the Honorable Robert Pitman.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual

findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 29th day of December, 2020.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE